STATE OF NORTH CAROLINA v. BERNARD REID McKINNON

No. 138A81

(Filed 13 July 1982)

1. **Searches and Seizures § 23— warrant to search automobile—information contained in warrant not stale**

    In a prosecution for armed robbery, first degree rape and first degree sexual offense, the trial court properly admitted evidence taken from defendant's automobile pursuant to a search warrant even though the search of the car was conducted two weeks after the crimes were committed where, from the information contained in the warrant, it was reasonable for the issuing magistrate to conclude that probable cause existed that some of the stolen items remained in the automobile and since the affidavit noted that the automobile had not been operational since a short time after the commission of the crime.

2. **Rape and Allied Offenses § 6— first degree rape—instruction concerning type of gun used—no change from theory alleged in indictment**

    In a prosecution for first degree rape where the indictment charged that defendant raped and committed a sexual offense upon the victim "with the use of deadly weapons, to wit: a rifle, a shotgun and a pistol," a statement in the instructions that the deadly weapon element of these offenses would be met if the victim reasonably believed a fake gun to be a dangerous or deadly weapon did not change the theory alleged in the indictment since the evidence was plenary that at least three weapons were employed in the commission of the crimes. G.S. § 14-27.2(a)(2)(a) and G.S. § 14-27.4(a)(2)(a) (1981).

3. **Rape and Allied Offenses § 5— first degree rape and first degree sexual offense—sufficiency of evidence that defendant aided and abetted**

    In a prosecution for first degree rape and first degree sexual offense, the evidence was sufficient to prove that defendant aided and abetted a codefendant in the commission of both crimes where the evidence tended to show that

defendant was present at the scene of the crimes committed by codefendant and that he actively aided, encouraged and participated in the robbery of all the victims, the stripping of their clothes and the removal of two girls to an area separate from the male victims, and that defendant and codefendant were in close proximity to one another while one of the victims was being sexually assaulted, that both defendants ordered the girls to remove their clothes and both had firearms in their possession.

**4. Rape and Allied Offenses § 6— first degree rape and first degree sexual offense—failure to repeat elements of offenses in final mandate—no error**

It was not error for the trial court to fail to set forth anew all the elements of the underlying offenses of rape and sexual offense in the final mandate after the trial court fully and completely instructed the jury with respect to each of the elements of the offenses of first degree rape and first degree sexual offense as well as the theory of aiding and abetting.

**5. Rape and Allied Offenses § 6.1— first degree rape and first degree sexual offense—failure to submit lesser offenses—no error**

In a prosecution for first degree rape and first degree sexual offense where the evidence indicated that defendant and a codefendant each raped separate victims, if the defendant was guilty of the crimes committed against the victim his codefendant raped, he was guilty as an aider and abettor, and, therefore, was guilty of first degree offenses or nothing at all. Further, as to those offenses to which the defendant was the actual perpetrator, he was not entitled to have the lesser degrees of the offenses submitted to the jury as possible alternative verdicts since the evidence was positive that defendant had a deadly or dangerous weapon in his possession at the time he ordered the victim to perform a sex act and there was no evidence present from which a jury could find that the sexual assaults took place without the use of a weapon or weapons.

BEFORE *Clark, Judge,* at the 25 May 1981 Criminal Session of Superior Court, CUMBERLAND County.

On indictments proper in form defendant was tried and convicted of five counts of armed robbery, two counts of first degree rape and two counts of first degree sexual offense. For each of the armed robbery convictions defendant was sentenced to a minimum of fifteen years and a maximum of twenty years in the state prison as a regular youthful offender. For each of the convictions of first degree rape and first degree sexual offense, defendant was sentenced to a minimum and maximum term of life imprisonment as a regular youthful offender. The court ordered that the life sentences imposed for first degree sexual offenses would begin at the expiration of the fifteen to twenty year sentence imposed for the armed robbery of Linda Marquette, indictment number 80CRS63956. Defendant appealed the life

sentences to this Court as a matter of right. We allowed his motion to bypass the Court of Appeals in the armed robbery cases on 30 December 1981.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Dennis P. Myers, for the State.*

*Adam Stein, Appellate Defender, and Marc D. Towler, Assistant Appellant Defender, for the defendant.*

CARLTON, Justice.

I.

Evidence for the State tended to show that on the evening of 15 December 1980, Jimmy and David Blevins, Roy Allen, Linda Marquette and Angela Graham drove to the Clay Pits, a local swimming hole and gathering place for young people. They arrived in Graham's car at approximately 9:00 p.m. and drank beer and smoked marijuana. A car, with its headlights shining on the Graham car, drove up. It pulled up beside the Graham car and stayed a few minutes. Then the car backed up, its lights were turned out and it left. Shortly thereafter, according to the testimony of the Blevins, Allen, Marquette and Graham, three black males wearing toboggans approached the group, surrounded the car and ordered the occupants to "freeze." Two carried shotguns or rifles while another had a pistol. The three men ordered the group to lie on the ground and keep their heads down. The car was searched and various items were taken. The billfolds were removed from the pants of the men. One of them remarked that they were getting revenge for the way whites had treated blacks in the past. Graham was ordered to raise the hood of her car.

The group was then ordered to strip. They did so and their clothes were thrown into the water. They were again forced to lie down and one of the assailants, who was carrying a shotgun, stood over them. The girls were ordered to move away from the boys and to lie on the ground. One of the men put a shotgun against Graham's face. He forced her to get on her knees and perform oral sex. He then forced her to lie down and raped her. Another of the assailants forced Linda Marquette to perform oral sex and intercourse with him. The girls were then allowed to re-

join the group and were instructed to count backwards from one hundred. They heard the men run away. Numerous items had been taken, including a K-Mart battery, an FM converter, pocketbooks, wallets, money, watches and two six-packs of Budweiser beer. The victims made their way to a nearby house and called the police.

None of the five victims were able to identify defendant as one of the participants in the crimes. Angela Graham testified that defendant was not the person who raped her. She also testified that the man who raped Linda Marquette had a handgun in his pocket.

Additional testimony for the State came from Ivey McCoy (McCoy), who testified pursuant to a plea bargain. He stated that he, Andrew Rich, Angelo McCoy (Angelo) and defendant left McCoy's house in defendant's automobile around 8:00 to 8:30 p.m. on 15 December 1980. They stopped at the Clay Pits at around 9:00 p.m., saw Graham's car there and decided to rob the occupants. They returned to McCoy's house and picked up a .25 automatic pistol, a .22 rifle and a .16 gauge shotgun. They returned to the Clay Pits some ten or fifteen minutes later. They parked the car on the highway and McCoy, Rich and defendant walked down to the Clay Pits. Angelo remained in the car. They announced a hold-up and ordered the group out of the car. Rich told them to lie on the ground. McCoy searched them and took the men's wallets from their pockets and the women's purses from the car. McCoy took the wallets back to defendant's car and returned with a knife to cut the battery wires. Defendant then took the battery to his car.

Defendant and Rich then told everyone to remove their clothes. Rich and defendant gave the guns to McCoy and Rich forced Angela Graham to perform oral sex with him while defendant forced Linda Marquette to perform oral sex also. Marquette was then forced to have intercourse. McCoy testified that he then returned to the car.

McCoy and Angelo then left and returned the guns to McCoy's house and burned the wallets and purses. They left defendant's car at a ball park and returned to the McCoy house around 11:00 p.m. Around midnight, defendant and Rich returned to the house and defendant was boasting of his sexual conquest.

Defendant told McCoy that McCoy had left him with a fake gun. McCoy testified that he had never seen the fake gun.

Other facts pertinent to this opinion are noted below.

## II.

[1]  These crimes were committed on 15 December 1980. Two weeks later, on 29 December 1980, law enforcement officers obtained a warrant to search defendant's vehicle. The warrant was served on defendant's grandmother and a search of the car revealed several items, including a K-Mart battery. Prior to trial, defendant moved to suppress evidence obtained pursuant to the search warrant on the ground that insufficient probable cause existed for its issuance. Conceding that the underlying affidavit may have shown probable cause to believe that the items were located in defendant's car on 15 December 1980, defendant contends that there is nothing in the underlying affidavit to establish probable cause that the items would be located in the car some two weeks after the robbery. In other words, defendant contends that the information provided in the affidavit before the magistrate suffers from staleness.

It is a basic proposition of constitutional law that in order for a search warrant to be valid it must be based on probable cause. U.S. Const. amend. IV; *accord*, G.S. §§ 15A-243 to -245 (1978). As stated by our case law:

> probable cause means a reasonable ground to believe that the proposed search will reveal the presence, upon the premises to be searched, of the objects sought and that those objects will aid in the apprehension or conviction of the offender. (Citation omitted.) Thus, the affidavit upon which a search warrant is issued is sufficient if it "supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender."

*State v. Riddick*, 291 N.C. 399, 406, 230 S.E. 2d 506, 511 (1976) (quoting *State v. Vestal*, 278 N.C. 561, 576, 180 S.E. 2d 755, 765 (1971), *cert. denied*, 414 U.S. 874 (1973)); *accord*, *State v. Jones*, 299 N.C. 298, 261 S.E. 2d 860 (1980).

The application for a search warrant must contain, *inter alia*, a statement that there is probable cause to believe that the items subject to seizure may be found in a designated place. G.S. § 15A-244(2). The statement must be supported by one or more affidavits setting forth with particularity the facts and circumstances establishing probable cause to believe that the items are in that place or in the possession of the individuals to be searched. G.S. § 15A-244(3). Information other than that contained in the affidavit may not be considered by the issuing official in determining probable cause. G.S. § 15A-245.

> The affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant; but the affidavit in such case must contain some of the underlying circumstances from which the affiant's informer concluded that the articles sought were where the informer claimed they were, and some of the underlying circumstances from which the affiant concluded that the informer, whose identity need not be disclosed, was credible and his information reliable. (Citations omitted.)

> Whether the affidavit is sufficient to show probable cause must be determined by the issuing magistrate rather than the affiant. This is constitutionally required by the Fourth Amendment. (Citation omitted.)

*State v. Campbell*, 282 N.C. 125, 129, 191 S.E. 2d 752, 755-56 (1972).

Whether probable cause exists for the issuance of a search warrant depends upon a practical assessment of the relevant circumstances. *State v. Phifer*, 297 N.C. 216, 254 S.E. 2d 586 (1979); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971). Each case is to be decided on its own facts. "[R]eviewing courts are to pay deference to judicial determinations of probable cause (citation omitted), and 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *State v. Louchheim*, 296 N.C. 314, 324, 250 S.E. 2d 630, 636 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed. 2d 684, 689 (1965)), *cert. denied*, 444 U.S. 836 (1979).

As defendant correctly notes, probable cause cannot be shown by affidavits which are purely conclusory. An affidavit

which merely states the affiant's belief that probable cause exists without detailing any of the underlying circumstances is insufficient. A recital of some of the underlying circumstances in the affidavit is necessary if the magistrate is to perform his proper function. *State v. Campbell*, 282 N.C. 125, 191 S.E. 2d 752. The issuing officer "must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion . . . ." *Giordenello v. United States*, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed. 2d 1503, 1509 (1958).

In the application for the search warrant here, the officer swore to the following facts:

> The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: That on 15 December 1980, Angela Graham, Linda Marquette, Jimmy Blevins, David Blevins and Roy Allen stated to this officer that they were at the Clay Pits off 301s and that an old model car, light in color, with one headlight out came to the Clay Pits and turned around, that the vehicle left and about ten to fifteen minutes later, after the described vehicle left, they were approached by three black males armed with firearms, that they were forc[e]d out of the car, that they were robbed of personal property, that a FM Converter and K-Mart battery were taken from Angela's car, that they were made to take their clothing off, that Angela Graham and Linda Marquette were forced at gunpoint to perform oral sex on two of the black males, that these same two black males then raped the girls. On 17 December 1980, Angela Graham looked through a motor vehicle identification book and stated to this officer that the car that came to the clay pits on 15 December 1980 had the same rear features as a 1972 Pontiac. On 27 December 1980, Ivey Dwight McCoy and Bernard Reid McKinnon were arrested on these charges. Ivey McCoy gave a sworn statement to the fact that on 15 December 1980 he went with Bernard McKinnon and Andrew Rich to the clay pits, in Bernard McKinnon's white/gold Pontiac. That they saw the victims there and left and went to his father's house and got guns and came back and robbed the victims and Bernard McKinnon and Andrew Rich forced the girls to perform oral sex on them and then raped them, that he (Ivey McCoy)

had taken the items they stole from the victims and placed them in Bernard McKinnon's car. On 28 December 1980 Det Sgt E E Wiggs went to Rt 12, Box 717, Fayetteville, North Carolina and observed above described vehicle in the yard of this residence. He talked with Mrs Annie D McKinnon and Mrs Barbara McKinnon, Great Grandmother and Mother of Bernard McKinnon. Mrs Annie McKinnon advised that the car was the property of Bernard McKinnon, that he had registered i[t] in the name of Larry Dixon, his uncle, in order to obtain cheaper insurance rates due to a bad driving record. That the car was locked and they didn't know where the keys to it were, that the motor had blown up and it had not been operational since before Christmas. It is believed that some of the items taken during the robbery of the victims are still in the car. I therefore pray that a Search Warrant be issued.

Defendant contends that the foregoing suffers from staleness in that the only statement indicating that the items would be in the defendant's car some two weeks after commission of the crime was the mere conclusory allegation that, "It is believed that some of the items taken during the robbery of the victims are still in the car."

We disagree. A practical assessment of the information before the magistrate could lead a reasonably prudent magistrate to conclude that the information was credible and that the proposed search of the automobile would reveal the presence of the objects sought and that those objects would aid in the apprehension or conviction of the defendant.

> Common sense is the ultimate criterion in determining the degree of evaporation of probable cause. *United States v. Brinklow,* 560 F. 2d 1003 (10th Cir. 1977), *cert. denied,* 434 U.S. 1047 (197[8]); *State v. Louchheim, supra.* "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock. . . ." (Citations omitted.) "The significance of the length of time between the point probable cause arose and when the warrant issued depends largely upon the property's nature, and should be contemplated in view of the practical consideration of everyday life." *United States v. Brinklow,* supra (citations omitted).

*State v. Jones*, 299 N.C. at 305, 261 S.E. 2d at 865. Applying the foregoing, we hold that the search warrant was properly issued and the evidence properly admitted. While the items sought could have been disposed of by defendant between the commission of the crimes and the time of his arrest, we are unwilling to say, as a matter of law, that it was unreasonable for the issuing magistrate to conclude that probable cause existed that some of the stolen items remained in the automobile. The affidavit noted that the vehicle had not been operational since before Christmas, that the car was locked and location of the keys unknown, all indicating that the vehicle had not been entered since a short time after the commission of the crimes.

This assignment of error is overruled.

III.

[2] Defendant next contends that the trial court erred in instructing the jury that it could convict defendant of first degree rape and first degree sexual offense upon Linda Marquette on a theory not charged in the indictment. The indictment charged that defendant raped and committed a sexual offense upon Linda Marquette "with the use of deadly weapons, to wit: a rifle, a shotgun and a pistol." The trial court originally instructed the jury in the same words used in the indictment. Later, the trial court instructed the jury that

> if the State proves in this case beyond a reasonable doubt that in the commission of the offenses of first degree rape or first degree sexual offense upon Linda Marquette that the Defendant displayed or employed either a gun which was a deadly weapon, or that he employed or displayed a fake gun, and that Linda Marquette reasonably believed that the fake gun was a dangerous or deadly weapon, then this element of the offenses would be established.

Defendant contends that reference to the fake gun amounted to a charge on a theory not alleged in the indictment. Reference to the fake gun resulted from the testimony of the witness McCoy who testified that defendant had made reference to his being left at the scene with a fake gun. McCoy also testified that he had never seen the fake gun and did not know whether it existed.

We first note that defendant does not challenge the trial court's instructions as being an incorrect statement of the law. His contention is that the trial court's instruction allowed him to be convicted on a theory not alleged in the indictment.

First, we disagree that defendant was tried on a theory different from that alleged in the indictment. The evidence was plenary that at least three weapons were employed in the commission of these crimes. A statement that the deadly weapon element of these offenses would be met if the victim reasonably believed a fake gun to be a dangerous or deadly weapon did not change the theory alleged in the indictment. *See* G.S. §§ 14-27.2 (a)(2)(a), -27.4(a)(2)(a) (1981). Such was a correct statement of the law; the jury was merely instructed that the State's theory as to the element of a dangerous weapon could be met if the victim reasonably believed the item used to be the dangerous or deadly weapon of the type alleged in the indictment.

This assignment of error is overruled.

## IV.

Defendant next contends that the trial court improperly expressed its opinion on defendant's guilt when it gave the instruction quoted in the preceding section. The instruction was given after the jury returned and requested to hear again the testimony and statements of Linda Marquette and Ivey McCoy. Again conceding that the instruction was not a misstatement of the law, defendant contends that its timing was such that it constituted an expression of judicial opinion that defendant was guilty of these offenses.

Defendant's argument is patently without merit. We find it inconceivable that the trial court's added and correct instructions to the jury could possibly have been interpreted by the jury as an expression of the court's opinion concerning defendant's guilt.

## V.

[3] Defendant next contends that the trial court erred in denying his motions to dismiss the charges of first degree rape and first degree sexual offense upon Angela Graham in that there was insufficient evidence that he aided and abetted Andrew Rich in the commission of these crimes. Noting that the State's evidence

consisted of testimony indicating that he engaged in sexual activity only with Linda Marquette, defendant argues that there was no evidence that he participated with Andrew Rich in any sexual activity with Angela Graham. Defendant contends that the record is devoid of any evidence indicating that he aided and abetted Rich in any manner.

This Court has recently addressed a similar argument in *State v. Barnette*, 304 N.C. 447, 284 S.E. 2d 298 (1981), and we find that case controlling here. There, we reiterated the well-established rule in this jurisdiction that in reviewing the denial of a motion to dismiss, we must examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime. Evidence is "substantial" if a reasonable person would consider it sufficient to support the conclusion that the essential element exists. We stated:

> Put another way, we must examine the evidence to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981); *see Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). First degree rape is defined as vaginal intercourse by force and against the will of the victim when the perpetrator employs or displays a deadly weapon or an article which the victim reasonably believes is a deadly weapon, inflicts serious bodily injury, or is aided or abetted in the commission of the offense by one or more persons. G.S. § 14-27.2(a) (1981). An aider or abettor is a person who is actually or constructively present at the scene of the crime and who aids, advises, counsels, instigates or encourages another to commit the offense. (Citations omitted.) Even though not actually present during the commission of the crime, a person may be an aider or abettor if he shares the criminal intent of the perpetrator and if, during the commission of the crime, he is in a position to render any necessary aid to the perpetrator. (Citations omitted.)

*Id.* at 458, 284 S.E. 2d at 305. Here, the trial court submitted the first degree rape and first degree sexual offense charges to the jury on the theory that defendant aided and abetted Andrew Rich

in the crimes committed against Graham. Evidence for the State was plenary that defendant was not only present at the scene of the crimes committed by Andrew Rich but that he was actively aiding, encouraging and participating in the robbery of all the victims, the stripping of their clothes and the removal of the girls to an area separate from the male victims where the sex crimes took place. The evidence indicates that defendant and Rich were in close proximity to one another while Angela Graham was being sexually assaulted. Both defendants ordered the girls to remove their clothes and both had firearms in their possession. McCoy testified that Rich and defendant had the firearms "drawed on *them*." (Emphasis added.) Clearly, defendant was an active participant in the crimes committed against Graham by Rich. Thus, there is sufficient evidence that defendant and Rich shared the community of unlawful purpose necessary for aiding and abetting. *See State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated*, 408 U.S. 939 (1972). The trial court properly denied defendant's motions to dismiss.

## VI.

[4] Defendant next contends that the trial court erred because, in its final mandate, it did not set forth all of the elements of the underlying offenses of first degree rape and first degree sexual offense. In the final mandate, the trial court instructed the jury that if it found beyond a reasonable doubt that Rich committed the first degree rape and first degree sexual offense upon Angela Graham and that defendant was present at the time the crimes were committed, was armed, had held his gun on others who were present and had engaged himself in the rape and sexual offense upon Linda Marquette after having participated in the robbery of all the victims and that in so doing the defendant knowingly advised, encouraged or aided Andrew Rich to commit the first degree rape and first degree sexual offense, then defendant could be found guilty of the first degree rape and the first degree sexual offense committed against Angela Graham.

Our review of the trial court's instruction leads us to conclude tht defendant's contention is without merit. Prior to giving its final mandate, the trial court fully and completely instructed the jury with respect to each of the elements of the offenses of first degree rape and first degree sexual offense as well as the

theory of aiding and abetting. We reject defendant's contention that it was error for the trial court to fail to set forth anew all the elements of the underlying offenses of rape and sexual offense in the final mandate. It is well established in this jurisdiction that a charge is to be construed as a whole and if, when so construed, it is sufficiently clear that no reasonable cause exists to believe that the jury was misled or misinformed, any exception to the charge will not be sustained even though the instruction could have been more aptly worded. *E.g., State v. Watson,* 294 N.C. 159, 240 S.E. 2d 440 (1978). Here, the trial court had at length explained the underlying elements of the crimes of rape and sexual offense just prior to the final mandate. We find there is no reasonable cause to believe that the jury was misled or misinformed by failure of the trial court to repeat these elements. *See also State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied,* 423 U.S. 1091 (1976).

## VII.

**[5]** Finally, defendant contends that the trial court erred in failing to submit the lesser included offenses of second degree rape and second degree sexual offense. He contends that the testimony of Ivey McCoy indicated that defendant handed his weapon to McCoy as they began their sexual assaults on Angela Graham and Linda Marquette and, hence, the essential element of use of a deadly weapon is missing.

We find no merit to defendant's contention. We first note that defendant could be convicted of the rape and sexual offense committed upon Graham only if he aided and abetted Rich, the actual perpetrator. If defendant was guilty of the crimes committed against Graham, he was guilty as an aider and abettor. Thus, he was guilty of first degree offenses or nothing at all. *See State v. Barnette,* 304 N.C. 447, 284 S.E. 2d 298. Failure to instruct on second degree rape and second degree sexual offense, as to the crimes committed against Graham, was entirely proper. We turn to a consideration of the offenses committed against Marquette.

As to these offenses, defendant was charged as the actual perpetrator and not as an aider and abettor and was entitled to have all lesser degrees of offenses which were supported by the evidence submitted to the jury as possible alternative verdicts, *State v. Drumgold,* 297 N.C. 267, 254 S.E. 2d 531 (1979). However,

the trial court is not required to submit lesser degrees of a crime to the jury "when the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the charged crime." *State v. Harvey*, 281 N.C. 1, 13-14, 187 S.E. 2d 706, 714 (1972); *accord*, *State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980); *State v. Drumgold*, 297 N.C. 267, 254 S.E. 2d 531.

Here, the evidence is positive that the defendant had a deadly or dangerous weapon in his possession at the time he ordered Marquette to perform the sex act and thereby gained her submission and there is no evidence present from which a jury could find that the sexual assaults took place without the use of a weapon or weapons. *See State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189. Linda Marquette testified that the person who forced her to perform fellatio had a gun in his hand. The testimony of the witness McCoy indicated that both Rich and the defendant gave him their guns when they began committing the sex acts with Graham and Marquette and that he remained in the vicinity with the guns throughout the oral sex acts and until defendant and Rich began raping the victims. From this evidence, we do not believe there is a reasonable inference for the jury that the resistance of these victims was overcome by any means other than the use or threatened use of deadly and dangerous weapons, weapons which were displayed by defendant, McCoy and Rich throughout this incident.

In making this argument defendant relies on *State v. Drumgold*, 297 N.C. 267, 254 S.E. 2d 531. There, however, the defendant presented evidence through several witnesses that he did not have a gun in his possession on the day the alleged rape occurred, a contention in clear contrast to the theory of the State's case and the evidence it presented. Here, however, there is absolutely no evidence giving rise to a reasonable inference to dispute the State's contention that defendant had in his possession a dangerous weapon at or near the time these offenses took place. Thus, *Drumgold* is not controlling. *See State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189. This assignment of error is overruled.

We conclude that this defendant had a fair trial, free from prejudicial error.

No error.