IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-865

Filed: 2 June 2020

Cleveland County, No. 16 CRS 210

STATE OF NORTH CAROLINA

v.

MICHAEL ERIC CAMPBELL, Defendant.

Appeal by Defendant from judgment entered 28 February 2019 by Judge David A. Phillips in Cleveland County Superior Court. Heard in the Court of Appeals 31 March 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General William D. Walton, for the State.*
>
> *Vitrano Law Offices, PLLC, by Sean Paul Vitrano, for Defendant.*

INMAN, Judge.

Michael Eric Campbell ("Defendant") appeals the trial court's judgment entering a jury verdict convicting him of trafficking in methamphetamine. Because the evidence introduced at trial showed only that Defendant believed the white substance handed to him was fake, rather than an impure mixture of methamphetamine, and because the issue of Defendant's knowing possession of the drug is controlled by this Court's prior decisions, we reverse the trial court's judgment.

I.  Factual and Procedural Background

Evidence presented by the State at trial showed the following:

On 12 June 2014, the Cleveland County Sheriff's Office, in coordination with the Drug Enforcement Administration, and with the assistance of an informant, arranged a controlled sale of methamphetamine at a local motel.  Defendant had purchased methamphetamine from the informant, Greg Blackburn ("Blackburn"), on prior occasions, and he owed Blackburn approximately $2,000.00.

Defendant arrived at the motel with Donnie Brown ("Brown").  They entered a motel room and Defendant sat on a bed next to Blackburn.  Blackburn handed Defendant a plastic container wrapped in black electrical tape, which contained approximately twenty-eight grams, or one ounce, of a white crystalline substance that Blackburn said was methamphetamine.  Defendant opened the container, examined its contents, and said, "This is re-rock."  The substance was, in fact, a mixture of one gram of methamphetamine and twenty-eight or twenty-nine grams of a cutting agent. Blackburn insisted to Defendant that the methamphetamine was real.  Brown asked to examine it, and Defendant then handed the container to Brown.  Law enforcement officers entered the room and arrested Defendant and Brown.

An officer read Defendant his Miranda rights and Defendant then agreed to speak with law enforcement.  According to Defendant, he began helping Blackburn distribute methamphetamine three months earlier, in March 2014.  Defendant said

that he had purchased quarter-ounce quantities of methamphetamine from Blackburn on four separate occasions, that he had previously sold to another individual, and that he would set up a controlled transaction to sell additional methamphetamine to that individual.

At the close of the State's evidence, Defendant moved to dismiss the case, arguing that the evidence showed he "did not know [the substance in the container] was methamphetamine" and, therefore, "did not knowingly possess methamphetamine." Defendant's motion was denied by the trial court.

Defendant presented no evidence. The jury found Defendant guilty of trafficking in methamphetamine. The trial court sentenced him to 70 to 93 months in prison and ordered him to pay a $50,000.00 fine. Defendant timely appeals.

## II. Analysis

Defendant argues that the trial court erred when it denied his motion to dismiss for insufficiency of the evidence.[1] After careful review, we agree.

### A. Standard of Review

We review the trial court's denial of a motion to dismiss *de novo*. *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). "To survive a motion to dismiss for insufficient evidence, the State must present substantial evidence of all

---

[1] Defendant also argues that the trial court committed plain error in admitting hearsay evidence. Because we agree with Defendant that the trial court erred in denying his motion to dismiss, we do not reach the second argument.

the material elements of the offense charged and that the defendant was the perpetrator of the offense." *State v. Campbell*, 368 N.C. 83, 87, 772 S.E.2d 440, 444 (2015) (citation and quotation marks omitted). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Herring*, 322 N.C. 733, 738, 370 S.E.2d 363, 367 (1988). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

B. *Knowing Possession of a Controlled Substance*

Defendant was convicted of trafficking in methamphetamine in violation of N.C. Gen. Stat. § 90-95(h)(3b), which provides: "Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine or any mixture containing such substance shall be guilty of a felony[.]" N.C. Gen. Stat. § 90-95(h)(3b) (2013). To obtain a conviction under section 90-95(h)(3b), "the State must prove the defendant (1) knowingly possessed or transported methamphetamine, and (2) that the amount possessed was greater than 28 grams." *State v. Shelman*, 159 N.C. App. 300, 305, 584 S.E.2d 88, 93 (2003) (citations omitted). In this case, the State's evidence did not show that Defendant knowingly possessed methamphetamine.

The evidence discloses that Defendant and Brown met with Blackburn, a police informant, at a motel to purchase methamphetamine. Brown testified at trial that Blackburn handed the closed container to Defendant, who opened it and said, "This is re-rock. . . . [T]hat's fake meth." Blackburn's girlfriend, Lindsey Cochran ("Cochran"), who was also in the motel room, testified that Defendant "looked at [the contents of the container] and he was, like, This is re-rock. It's fake. . . . He said it was fake."

Deputy Matthew Sadler ("Deputy Sadler"), one of the sheriff's deputies listening in on the transaction, testified that "when the canister was passed from Blackburn to [Defendant], he said – he opened it and said, 'This is fake.' He said, [']This is fake or it's flex.' And then he handed it to Donnie Brown. . . . [I]t was identified as flex and then handed off to Mr. Brown." Brown asked to inspect the contraband because he had never seen "re-rock" before and wanted to know what it looked like. Brown opened the container and looked at its contents; the moment he did so, Deputy Sadler entered the room and arrested Defendant and Brown.

Every witness for the State testified that Defendant used the term "re-rock" to describe "fake" drugs.[2] When asked directly what "re-rock" is, Brown testified:

> At the time I had no idea what it was. They said that's fake meth. I said, "Let me see it." [Defendant] handed it to me. I opened it and looked at it. As soon as I looked at it, Mr. Sadler come [sic] walking through the door.

---

[2] Although Deputy Sadler testified that Defendant said, "This is fake. . . . This is fake or it's *flex*[,]" (emphasis added), no definition of the term "flex" was ever provided to the jury.

. . . .

>It just looked a little milky.  Regular meth is a little clearer,
>like glass, and this had a milky color to it.

The prosecutor also asked Cochran if she knew what "re-rock" was, and she testified "[n]ot really" before confirming that Defendant said "it was fake[.]"  No other witnesses testified what "re-rock" meant, leaving the jury with a singular definition: fake methamphetamine.

Our dissenting colleague asserts that "re-rock" in the particular vernacular of the illicit drug trade means some form of diluted, impure, or watered-down controlled substance.  But no evidence introduced at trial informed the jury of that possible meaning, or any meaning other than a fake substance.

The dissent asserts we are intruding upon the jury's duty to weigh the evidence because we "do[ ] not understand what the terms 're-rock' or 'flex' mean."  The question is not whether this Court understands these terms, but whether a juror could draw a reasonable inference *from the evidence presented by the State* consistent with the meaning proposed by the dissent.  The State could have offered such evidence.  *See, e.g., State v. McClaude*, 237 N.C. App. 350, 356, 765 S.E.2d 104, 109 (2014) (upholding the trial court's denial of a motion to dismiss a charge of cocaine possession when a sheriff's deputy testified, based on his training and experience, about the meaning of slang terms used by the defendant in describing drug

transactions). It did not, and instead demonstrated only that Defendant considered the substance to be fake.[3]

Because the evidence showed Defendant believed he was handed fake methamphetamine, his inspection and handling of the substance, in accord with prior decisions by this Court, does not amount to knowing possession. *See State v. Wheeler*, 138 N.C. App. 163, 530 S.E.2d 311 (2000); *State v. Moose*, 101 N.C. App. 59, 398 S.E.2d 898 (1990).

In *State v. Wheeler*, during a controlled sale, an undercover officer handed the defendant cocaine, which the defendant in turn handed to his accomplice. *Wheeler*, 138 N.C. App. at 164, 530 S.E.2d at 312. The accomplice tasted the substance and handed it back to the undercover officer, expressed concerns with the quality of the drug, and told the officer he and the defendant did not want to complete the purchase. *Id*. This Court concluded the State did not present substantial evidence of possession, much less knowing possession, because the defendant and his accomplice "handled the cocaine for the sole purpose of inspecting it and after inspection they made a

---

[3] The dissent posits that our analysis also requires casting a skeptical eye to the word "fake," suggesting it is an equally obscure term with a meaning specific in the drug trade. Unlike the term "re-rock," "fake" has been commonly used in the English language since the 1800s. *See* Black's Law Dictionary (11th ed. 2019) (defining "fake," dating to the 19th century, as "[s]omething that is not what it purports to be.") The word "fake" has been used in hundreds of this State's appellate court decisions for more than a century for the same common meaning in a wide array of cases involving, by way of example, fake drugs, fake identification, fake name, and fake alibi. By contrast, the word "re-rock," appears in no prior decision by this Court or our Supreme Court The word "flex," as used in the context of the cocaine trade, has been used by this Court in just one decision, in which a police officer testified that it meant "fake crack cocaine." *State v. Massey*, 153 N.C. App. 324, 569 S.E.2d 736, 2002 WL 31163605, at *1 (2002) (unpublished). The Court in *Massey* did not define the word "fake."

determination not to purchase the cocaine." *Id.* at 165, 530 S.E.2d at 313. This Court ultimately held that the defendant's "handling of the cocaine for inspection purposes does not constitute possession within the meaning of section 90-95(h)(3), as he did not have the power and intent to control its disposition or use." *Id.* (citing *Moose*, 101 N.C. App. at 65, 398 S.E.2d at 901, and *United States v. Kitchen*, 57 F.3d 516, 524–25 (7th Cir. 1995)).

We conclude that *Wheeler* is controlling in this case. As in *Wheeler*, the State's evidence showed only that Defendant identified the substance as "re-rock" and "fake," and no evidence supports a reasonable inference that Defendant intended to continue the transaction after telling Blackburn he believed it was fake. To be sure, the evidence shows that Defendant came to the motel intending to purchase real—not fake—methamphetamine. And the State's evidence tended to show that Blackburn actually handed Defendant a mixture containing methamphetamine. Nonetheless, Defendant's identification of the substance as fake does not evince the requisite intent to control the disposition or use of a controlled substance. *Wheeler*, 138 N.C. App. at 165, 530 S.E.2d at 313 (citations omitted). Though Defendant handed the contraband to Brown after identifying it as fake, Brown's testimony shows that Defendant did so simply because Brown wanted to know what fake methamphetamine looked like rather than to continue the purchase. This Court has held that handling a drug solely for inspection purposes, standing alone, does not constitute possession. *See Moose*,

101 N.C. App. at 65, 398 S.E.2d at 901 (holding an informant did not possess cocaine for trafficking purposes when the informant inspected it by placing a finger into the white powder and touching it to the informant's lip); *see also Kitchen*, 57 F.3d at 524 (holding a defendant did not possess cocaine during a planned purchase when he picked it up to inspect it, expressed doubt as to its purity, and was arrested before he could expressly call off the transaction).

## III.  Conclusion

We hold that the trial court erred in denying Defendant's motion to dismiss because the State failed to present substantial evidence that Defendant possessed, much less knowingly possessed, the methamphetamine within the container.  The trial court's judgment is reversed.

REVERSED.

Chief Judge McGEE concurs.

Judge BERGER dissents by separate opinion.

BERGER, Judge, dissenting in separate opinion.

The majority opinion is at odds with the fundamental principle that "[t]he jury's role is to weigh evidence, assess witness credibility, assign probative value to the evidence and testimony, and determine what the evidence proves or fails to prove." *State v. Moore*, 366 N.C. 100, 108, 726 S.E.2d 168, 174 (2012) (citations omitted). It is further at odds with the idea that "[i]n borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Yisrael*, 255 N.C. App. 184, 193, 804 S.E.2d 742, 747 (2017) *(purgandum)*.

Here, twelve men and women from Cleveland County weighed and deliberated over the evidence presented, and they unanimously found Defendant guilty of trafficking in methamphetamine. Because the majority reweighs the evidence and renders a different verdict, I respectfully dissent.

Review of a trial court's denial of a Defendant's motion to dismiss is *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citing *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982)). "If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958) (citations omitted).[4] "In making its

---

[4] "The terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citation omitted).

determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted).

> The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged. In so doing the trial court should only be concerned that the evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence. It is not the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss.

*State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) (*purgandum*).

Pursuant to N.C. Gen. Stat. Section 90-95,

> Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine or any mixture containing such substance shall be guilty of a felony which felony shall be known as "trafficking in methamphetamine" and if the quantity of such substance or mixture involved:
>
> > a. Is 28 grams or more, but less than 200 grams, such person shall be punished as a Class F felon and shall be sentenced to a minimum term of 70 months and a maximum term of 93 months in the State's prison and shall be fined not less than fifty thousand dollars ($50,000)[.]

N.C. Gen. Stat. § 90-95(h)(3b)(a) (2019).

A defendant may be found guilty of trafficking in methamphetamine by possession if the State satisfies a two-prong test beyond a reasonable doubt. *State v. Cardenas*, 169 N.C. App. 404, 409, 610 S.E.2d 240, 243-44 (2005). First, the State must show that the defendant knowingly possessed methamphetamine. *Id.* at 409, 610 S.E.2d at 243. To satisfy the knowledge requirement, a "defendant must be aware of the presence of [the] illegal drug." *State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702-03 (1985). Second, the State must show "that the amount possessed [by the defendant] was 28 grams or more." *Cardenas*, 169 N.C. App. at 409, 610 S.E.2d at 243-44 (citation omitted).

Here, the State presented more than a scintilla of evidence that Defendant knowingly possessed more than 28 grams of a mixture of methamphetamine. The evidence tended to show that Defendant was a methamphetamine dealer who obtained his supply twice a week from Blackburn. Blackburn occasionally fronted quantities of methamphetamine to Defendant upon Defendant's promise to repay. On this occasion, Defendant was meeting Blackburn to acquire an ounce of methamphetamine. Brown testified that Defendant "was going to give me a bag of free meth for giving him a ride."

Once Defendant arrived at the pre-determined location for the transaction, Defendant asked where the illegal contraband was located. Blackburn "handed [Defendant] the container" wrapped in black electrical tape. At this point, the

evidence tended to show that Defendant had a mixture of more than 28 grams of methamphetamine in his possession.

Additionally, evidence was presented that upon opening the container, Defendant stated that the mixture of methamphetamine was "re-rock." Testimony was also presented that Defendant said the mixture of methamphetamine was "flex" or "fake." After Defendant made these comments, Blackburn reassured Defendant that the methamphetamine was good. Defendant handed the mixture of methamphetamine to Brown.

"Re-rock" is a term used in the illicit drug trade, typically associated with repackaging cocaine, to describe a watered-down product packaged in such a way to make it appear pure. This statement by Defendant is some evidence of Defendant's knowledge, and this evidence, in the light most favorable to the State, was properly submitted to the jury on the issue of knowing possession. The majority states that because it does not understand what the terms "re-rock" or "flex" mean, those terms have no evidentiary value. To be consistent, the majority should also include the term "fake," as that term was never defined in the context in which Defendant used it.

However, the question of whether Defendant knowingly possessed methamphetamine when he uttered "fake," "re-rock," or "flex" should turn on what Defendant meant when he uttered those terms, not the majority's knowledge. All three terms may have meant impure methamphetamine, or they could have all meant

counterfeit drugs. Or, it may have been an attempt by Defendant to renegotiate the deal because of the quality of the methamphetamine. Whatever Defendant meant when he uttered those terms, it is the "province of the jury to weigh the testimony and to decide upon its adequacy to prove any issuable fact." *State v. Owenby*, 226 N.C. 521, 523, 39 S.E.2d 378, 379 (1946). It is not the duty of this Court to assign evidentiary value and reweigh the evidence.

As in most cases, jury selection here was not recorded. We have no idea of who sat on the jury that heard Defendant's case. We do not know anything about the jurors' backgrounds. Perhaps this jury had members with prior experience in law enforcement or the drug trade. This jury could have consisted of twelve former law enforcement officers, twelve former drug dealers, or twelve former prosecutors. One juror may have understood exactly what "re-rock" or "flex" meant in this context and explained those terms to fellow jurors. Whatever the make-up of the jury, it was their duty to listen to the evidence and determine if they were fully satisfied or entirely convinced of Defendant's guilt using their reason and common sense.

Further, the majority contends Defendant did not possess methamphetamine because inspection of illegal contraband does not constitute possession under *State v. Wheeler*, 138 N.C. App. 163, 165, 530 S.E.2d 311, 313 (2000). However, *Wheeler* is readily distinguishable. In *Wheeler*, the defendant received cocaine from an undercover officer and then the defendant handed the contraband to his accomplice.

*Id.* at 164, 530 S.E.2d at 312. The accomplice tested the product and handed it back to the undercover officer. *Id.* at 164, 530 S.E.2d at 312. The defendant's accomplice said they did not want to continue with the purchase because of the poor quality of the cocaine. *Id.* at 164, 530 S.E.2d at 312. This Court concluded that under those circumstances, the State did not prove possession because the defendant and his accomplice "handled the cocaine for the sole purpose of inspecting it *and* after inspection they made a determination not to purchase the cocaine." *Id.* at 165, 530 S.E.2d at 312-13 (emphasis added).

Unlike *Wheeler*, Defendant did not affirmatively reject the methamphetamine mixture. At no time did Defendant return the container to Blackburn, attempt to become dispossessed of the methamphetamine once it was in his control, or otherwise indicate his intent to discontinue the transaction after Blackburn assured Defendant it was not "re-rock" (or "flex" or "fake"). Rather, Defendant handed the methamphetamine over to Brown. Brown never stated that they would not continue with the transaction, and Brown did not return the methamphetamine mixture to Blackburn. For these reasons, the trial court did not err, and Defendant's motion to dismiss was properly denied.

In addition, although the majority does not reach Defendant's plain error and Confrontation Clause arguments because of the disposition on his first argument, I would conclude that the trial court did not commit plain error when it admitted the

challenged evidence, and did not violate Defendant's rights under the Sixth Amendment.