STATE OF NORTH CAROLINA v. WAYNE GORDON

No. 359A85

(Filed 6 May 1986)

1. **Criminal Law § 162; Witnesses § 1.2 — competency of witness — failure to object**

    By failing to object to the court's implicit finding that a child was competent to testify, the defendant waived his right to assign this as error on appeal, N.C.G.S. § 15A-1446(d)(9) being applicable only where there was an improperly overruled objection to the competency of a witness.

2. **Witnesses § 1.2 — competency of six-year-old child to testify**

    The trial court did not abuse its discretion in finding that a six-year-old child was competent to testify in a rape trial where the witness did, at certain points in her *voir dire* testimony, show an understanding of the difference between truth and falsehood and of the importance to tell the truth, notwithstanding some of the witness's answers during *voir dire* were ambiguous and vague and she was completely unable to answer some of the questions asked her.

3. **Criminal Law § 34.8 — intercourse with another child — competency to show common scheme or plan**

    In a prosecution of defendant for the rape of his six-year-old stepdaughter, testimony that defendant had told the witness that he had engaged in sexual intercourse with his three-year-old daughter was admissible under N.C.G.S. 8C-1, Rule 404(b) to show a common scheme or plan by defendant to take sex-

ual advantage of the availability and susceptibility of his young daughters. Furthermore, such testimony was not unfairly prejudicial to defendant so as to require exclusion under Rule 403.

**4. Criminal Law § 85.3— rape trial—sexual advances toward another—improper cross-examination**

In a prosecution of defendant for rape of his six-year-old stepdaughter, the prosecutor's cross-examination of defendant about sexual advances which he allegedly made toward his sister-in-law was improper under N.C.G.S. 8C-1, Rule 608(b) since extrinsic evidence of sexual misconduct is not probative of a witness's character for truthfulness or untruthfulness. However, such error was not prejudicial where the evidence against defendant was strong, the prosecutor had previously asked defendant without objection whether he had molested another sister-in-law, and there was no reasonable possibility that a different result would have been reached had the error not been committed. N.C.G.S. § 15A-1443(a).

BEFORE *Friday, J.*, at the 22 April 1985 Criminal Session of Superior Court, HENDERSON County, defendant was convicted of first-degree rape and sentenced to the mandatory term of life imprisonment. The defendant appeals as a matter of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 10 March 1986.

*Lacy H. Thornburg, Attorney General, by Myron C. Banks, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

The defendant was charged in an indictment, proper in form, with on or about 4 January 1985 engaging in sexual intercourse with Dena Shackelford, a child under the age of thirteen. The State's evidence tended to show that the defendant and his wife, Sandra, were married in August 1981. At the time of the trial, their family consisted of five children: Lonnie, age eleven, the defendant's son by a previous marriage; Eddeana (also known as Dena), age six, Sandra's daughter by a previous marriage; a son, Vance, age unknown, and two daughters, Andrea, age four, and Jennifer, age seven months, the children of the defendant and Sandra. They resided in a mobile home park in Henderson County. Sometime in October 1984, the couple separated. However, during the last few days of December 1984, Sandra moved back

into their mobile home with the defendant, the children, and her sister Patty. Sandra testified that at some point during the last three days of December 1984, she went on an out-of-town trip with another man. She returned a few days after 1 January 1985.

From the second week in November 1984 until 4 January 1985, Eddeana stayed with her mother and Lorraine Shackelford, Sandra's other sister. Lorraine testified that on 31 December 1984, the defendant came to her house looking for Sandra. Eddeana asked the defendant if he was going to see her mother. When he replied in the affirmative, Eddeana asked if she could accompany him. The defendant acquiesced, and they drove off. Lorraine was unable to recall the exact length of time that Eddeana was gone; however, she knew that she was gone at least overnight.

Eddeana testified that, at some point in time, the defendant took off her panties and put his "ding-a-ling" in her "tee-tee." When asked to indicate where her "tee-tee" was, the witness pointed to her genital area. She stated that her mother was not at home when this took place. On cross-examination, Eddeana stated that the incident occurred before Christmas. She also testified that her brothers and sisters were sleeping in the same bed with her when the defendant committed this act.

Sharon Hensley, a social worker with the Henderson County Department of Social Services, testified that on the evening of 31 December 1984, she received a report that the children in the Gordon mobile home were hungry and dirty. Subsequently, Hensley, the children's grandmother, and law enforcement officers went to the mobile home to investigate the report. They arrived at approximately 11:00 p.m. Hensley testified that they discovered a man sleeping on a couch in the living room and the defendant in bed with Eddeana, Vance, Andrea, and Jennifer. They were all asleep. At that point, Hensley removed Vance, Andrea, and Jennifer from the bed, and the grandmother took them with her. Eddeana was left with the defendant. Neither Eddeana nor the defendant woke up during Hensley's visit.

Dahlene Morse, an employee with the Henderson County Department of Social Services, testified that her office had received a complaint from some of the Gordons' neighbors regarding the welfare of the children. On 4 January 1985, Morse went to Ed-

deana's school and talked with her. Morse testified that Eddeana said the defendant had put his "ding-a-ling" in her "tee-tee." Morse further testified that she had Eddeana use anatomically correct dolls to show what had occurred. She stated that Eddeana used the dolls to indicate that the defendant had engaged in vaginal intercourse with her.

Dr. James Volk, a pediatrician, testified that he examined Eddeana on 4 January 1985. He discovered that her vaginal opening was much larger than normal for a girl her age and that her hymen ring was not present. He also found her labia to be somewhat swollen. On cross-examination, Dr. Volk acknowledged that these conditions could have been caused by some means other than vaginal intercourse.

David Pressley testified that he had known the defendant since 1982 or 1983. Pressley stated that he had been convicted of breaking and entering and larceny and had been placed on probation. However, in February 1985, the sentence had been activated due to a probation violation, and he was incarcerated in the Henderson County jail. As a result of the charges in this case, the defendant was also incarcerated in the jail at that time, and he and Pressley were placed in the same cell. Pressley testified that while incarcerated together, the defendant stated that he had engaged in sexual intercourse with his three-year-old daughter (Andrea — defendant's natural daughter) and that he had attempted to do so with his five-year-old daughter (Eddeana — defendant's stepdaughter), but that she had showed resistance.

The defendant testified in his own behalf and denied having ever sexually molested Eddeana. The defendant's ex-wife testified that during their marriage, he had never done anything to cause her to suspect that he might be sexually abusing their two children.

Nancy Bell, the supervisor of children's services at the Trend Mental Health Agency, testified in rebuttal for the State. She stated that she had counseled Eddeana. Bell further testified that on three occasions, Eddeana used words and anatomically correct dolls to describe acts of sexual intercourse committed against her by a person Eddeana identified as the defendant.

Based on this and other evidence, the defendant was convicted of first-degree rape. The trial court entered judgment sentencing the defendant to the mandatory term of life imprisonment.

The defendant's first argument concerns the question of whether Eddeana was competent to testify at the trial. After the prosecution called Eddeana as a witness, a voir dire hearing was held to determine whether she was competent to testify. At the conclusion of the hearing, the trial judge stated that, in his opinion, Eddeana was able to recognize and distinguish between truth and untruth, and he permitted her to testify. Although the trial court did not expressly state that the witness was competent to testify, the fact that he permitted her to do so constituted an implicit finding to that effect. *See State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972). The defendant argues that the evidence at the voir dire hearing did not support the judge's implicit finding that the witness was competent, and the trial judge therefore erred by allowing her to testify.

[1] Under N.C.G.S. § 15A-1446(d)(9), the subsequent admission of evidence from a witness when there has been an improperly over-ruled objection to the admission of evidence on the ground that the witness is incompetent may be asserted as error on appeal notwithstanding the lack of an objection to or motion to strike the testimony at trial. Initially, we note that the defendant failed to object to the court's finding that Eddeana was competent to testify. The State asserts that because there was no improperly over-ruled objection to Eddeana's competence as a witness—due to defendant's failure to object to the court's finding that she was competent—the defendant is precluded from using this exception to assign error to her testimony on the ground that she was incompetent. We agree with the State's interpretation of the statute. By failing to object to the court's implicit finding that Eddeana was competent to testify, the defendant waived his right to assign this as error on appeal. The issue of the witness' competence would nevertheless be reviewable under the "plain error" standard. *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986); *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983). We conclude, however, that in this case the trial court did not err in finding Eddeana competent to testify.

Prior to the adoption of the North Carolina Rules of Evidence, the test for whether a witness was competent to testify was whether the witness understood the obligation of an oath or affirmation and had sufficient capacity to understand and relate facts which would assist the jury in reaching its decision. *State v. McNeely*, 314 N.C. 451, 333 S.E. 2d 738 (1985); *State v. Price*, 313 N.C. 297, 327 S.E. 2d 863 (1985); *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). We had also held that there was no fixed age limit below which a witness was incompetent to testify. *State v. Jones*, 310 N.C. 716, 314 S.E. 2d 529 (1984); *State v. Gibson*, 221 N.C. 252, 20 S.E. 2d 51 (1942). The determination of the competency of a witness was entrusted to the discretion of the trial judge, and his determination was conclusive on appeal absent a showing of an abuse of discretion. *State v. McNeely*, 314 N.C. 451, 333 S.E. 2d 738.

The determination of the competency of witnesses in trials occurring after 1 July 1984 is governed by Rule 601 of the North Carolina Rules of Evidence. Rule 601(b) provides:

(b) *Disqualification of witness in general.*— A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

As noted in *State v. Fearing*, 315 N.C. 167, 337 S.E. 2d 551 (1985), this standard is consistent with traditional North Carolina practice and case law concerning the issue of the competency of a witness. *See also* Official Commentary to N.C.G.S. § 8C-1, Rule 601; 1 Brandis on North Carolina Evidence § 55 (1982 and Supp. 1983).

**[2]** The defendant argues that the evidence elicited at the voir dire hearing indicates that Eddeana was incapable of understanding the duty to tell the truth. Specifically, he contends that the evidence failed to demonstrate that she understood the difference between truth and falsehood or the importance of telling the truth. We do not agree.

The record indicates that the witness was clearly able to differentiate between a true statement and one which was false.

Furthermore, she showed a general knowledge of the difference between right and wrong. Regarding her understanding of the importance of telling the truth, Eddeana testified that if she put her hand on the Bible and swore to tell the truth, it meant that she had to tell the truth.

It is true that some of the witness' answers during the voir dire were ambiguous and vague. Also, she was completely unable to answer some of the questions which were put to her. However, we have previously noted that such a performance is not unusual when the witness is a young child. *See State v. McNeely,* 314 N.C. 451, 333 S.E. 2d 738; *State v. Robinson,* 310 N.C. 530, 313 S.E. 2d 571 (1984). As noted previously, the witness did, at certain points in her testimony, show an understanding of the difference between truth and falsehood and of the importance of telling the truth. This testimony supports the implicit finding of the trial judge—who was present and able to observe the demeanor of the child firsthand—that the witness was competent. We are therefore unable to say that the trial judge abused his discretion in finding Eddeana competent to testify at the trial. This assignment of error is overruled.

[3]   The defendant next argues that the trial court erred by allowing David Pressley to testify that the defendant had told him that he had engaged in sexual intercourse with his three-year-old daughter. This evidence was introduced solely for the purpose of showing that the defendant engaged in a common scheme or plan embracing this crime, and the jury was instructed to that effect. The defendant contends that this evidence was inadmissible for this purpose.

Initially, we note that although the defendant did object to this testimony when it was first elicited, Pressley later gave the same testimony on direct examination without objection. Where evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence. *State v. Wilson,* 313 N.C. 516, 330 S.E. 2d 450 (1985); *State v. Maccia,* 311 N.C. 222, 316 S.E. 2d 241 (1984). Moreover, even if the defendant had properly preserved this issue for appellate review, he would have been unable to prevail,

since it is clear that this evidence was properly admitted by the trial court.

At common law, the general rule was that the State could not introduce evidence tending to show that a defendant had committed an independent offense even though it was of the same nature as the charged offense. *State v. Moore*, 309 N.C. 102, 305 S.E. 2d 542 (1983); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). In *McClain*, the Court enumerated eight exceptions to this general rule. One of these exceptions was:

> Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission.

*McClain*, 240 N.C. at 176, 81 S.E. 2d at 367. Both the general prohibition against the use of other crimes and misconduct and certain exceptions to the rule, including the common scheme or plan exception, have been codified in Rule 404(b) of the North Carolina Rules of Evidence. As noted in *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986), this provision is consistent with prior North Carolina practice. *See also* Official Commentary to N.C.G.S. § 8C-1, Rule 404.

This Court has been quite "liberal in admitting evidence of similar sex crimes" under the common plan or scheme exception. *State v. Effler*, 309 N.C. 742, 748, 309 S.E. 2d 203, 207 (1983). This position has included allowing the admission of evidence showing sexual assaults by the defendant against people other than the victim in the crime for which he is on trial. For example, in *State v. Arnold*, 314 N.C. 301, 333 S.E. 2d 34 (1985), the defendant was charged with committing a sexual offense against his nine-year-old nephew. We held that the testimony of the victim's brother to the effect that the defendant had committed sexual acts with him were admissible under the common plan exception of *McClain*, as it tended to prove that the defendant engaged in a scheme whereby he took sexual advantage of the availability and susceptibility of his young nephews each time they were left in his custody. In *State v. Williams*, 303 N.C. 507, 279 S.E. 2d 592 (1981) (judgment reversed due to fatal variance between allegations and proof), the defendant was charged with two counts of first-degree sexual of-

fense against two girls. We held that the testimony of a third girl with whom the defendant had engaged in sexual misconduct was admissible under the common plan exception of *McClain.*

We conclude that Pressley's testimony that the defendant had admitted engaging in sexual intercourse with his three-year-old daughter tended to show a common scheme or plan by the defendant to take sexual advantage of the availability and susceptibility of his young daughters. The testimony was therefore admissible under Rule 404(b).

The defendant goes on to argue that even if the evidence was admissible under the common plan exception, it should have been excluded under Rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. We do not agree. While it is true that the evidence was prejudicial to the defendant—as is true of most of the prosecution's evidence against a defendant—it cannot be said that it was *unfairly* prejudicial. The testimony was not unduly cumulative nor grossly shocking. Also, the trial judge gave a proper limiting instruction to the jury regarding this evidence. This assignment of error is overruled.

[4] Finally, the defendant argues that the trial court erred by permitting the prosecutor to cross-examine him concerning sexual advances which he allegedly made toward his sister-in-law Lorraine Shackelford. On cross-examination of the defendant, the following exchange took place:

> [PROSECUTOR:] Haven't you also been interested in bothering and attempting to molest Lorraine who testified this morning?
>
> MR. REDDEN [DEFENSE COUNSEL]: Objection.
>
> COURT: Sustained. You may rephrase your question.
>
> [PROSECUTOR:] You've made sexual advances toward Lorraine numerous times through the years, haven't you, Mr. Gordon?
>
> MR. REDDEN: Objection.
>
> COURT: Overruled. I'll allow that.
>
> [WITNESS:] I wouldn't know if you'd call it that or not. I'd say she's offered to me as much as I ever offered to her.

The defendant argues that this questioning was improper, as it constituted an impermissible attempt to attack his credibility. Rule 608(b) of the North Carolina Rules of Evidence states that the credibility of a witness may not be attacked through the introduction of evidence of specific acts of conduct unless it concerns his character for truthfulness or untruthfulness. We agree that extrinsic evidence of sexual misconduct is not in any way probative of a witness' character for truthfulness or untruthfulness. *See State v. Morgan*, 315 N.C. 626, 340 S.E. 2d 84 (1986). The prosecutor's questioning of the defendant regarding his sexual advances toward Lorraine was therefore improper. We conclude, however, that the error does not require that a new trial be granted, as there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (1983 and Cum. Supp. 1985).

The evidence against the defendant was strong. Furthermore, the prosecutor had previously asked the defendant whether he had molested Patricia Shackelford, another sister-in-law. This question was not objected to, and the defendant denied the accusation. It is well established that the admission of testimony or other evidence over objection is ordinarily harmless error when testimony or other evidence of the same import has previously been admitted without objection. *E.g., State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981); *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978). The prosecutor's question and the defendant's answer regarding his alleged conduct toward Patricia was of the same import as the questions and answer concerning his alleged conduct toward Lorraine. The failure of the trial court to sustain the defendant's objection to the prosecutor's cross-examination of the defendant as to alleged misconduct toward Lorraine was clearly harmless error.

The defendant received a fair trial, free from prejudicial error.

No error.