STATE OF NORTH CAROLINA v. LARRY ANTHONY EVERETT

No. 8912SC816

(Filed 3 April 1990)

1. **Witnesses § 1.2 (NCI3d) — rape and sexual offense — four-year-old witness — competent**

    A four-year-old rape victim's testimony met the standards of N.C.G.S. § 8C-1, Rule 601 and the trial court did not err in finding that she was competent to testify where, as in *State v. Hicks*, 319 N.C. 84, the victim did not understand her obligation to tell the truth from a religious standpoint and had no fear of certain retribution for mendacity, but demonstrated her capability to understand the duty of a witness to tell the truth.

    **Am Jur 2d, Rape § 101.**

2. **Criminal Law § 50.1 (NCI3d) — child rape victim — opinion of pediatrician — admissible**

    The trial court did not err in a prosecution for first degree rape and first degree sexual offense of a victim who was four years old at the time of trial by allowing a pediatrician to

STATE v. EVERETT

[98 N.C. App. 23 (1990)]

testify that in his best opinion penetration occurred more than two or three times, but that he could not be more specific. The pediatrician possessed an adequate foundation for his conclusion, and his opinion testimony would be of assistance to the jury in evaluating his specific medical findings. It is for the jury to determine the weight of his testimony in light of the manner in which the witness qualified his opinion.

**Am Jur 2d, Rape § 100.**

**3. Criminal Law § 34.8 (NCI3d) — rape of child — testimony concerning prior acts — admissible**

Testimony of defendant's daughter concerning prior acts of misconduct was admissible in a prosecution for first degree rape and first degree sexual offense where the relationship between the defendant and the two victims was emotionally a father-daughter relationship, sexual assaults on both victims occurred when each was approximately the same age, defendant put each victim onto his bed and then had sexual intercourse with her after first covering her face with a cloth, the assaults took place while his wife was at work, and defendant in both instances would afterwards get a towel to wipe off each victim. The evidence tends to prove a common scheme or plan on defendant's part to sexually abuse his daughters; moreover, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under N.C.G.S. § 8C-1, Rule 403, N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence § 326; Rape §§ 70, 71.**

**4. Rape and Allied Offenses § 5 (NCI3d) — rape of child — sufficiency of evidence as to time**

Where defendant was indicted and convicted for rape and first degree sexual offense with indictments covering the periods 1 February to 29 February, 1 March to 31 March, and 1 April to 14 April, the Court of Appeals found insufficient evidence for the first two indictments in that the State's evidence depended on the testimony of defendant's daughter, who testified as to when she was told of defendant's assaults by the victim, but did not testify with certainty as to when the assaults took place. There was sufficient evidence to prove at least one incidence of each of the alleged crimes in April.

STATE v. EVERETT

[98 N.C. App. 23 (1990)]

**Am Jur 2d, Rape §§ 88-92.**

Judge COZORT concurring in part and dissenting in part.

APPEAL by defendant from a judgment entered 16 March 1989 by *Judge Joe Freeman Britt* in CUMBERLAND County Superior Court. Heard in the Court of Appeals 13 February 1990.

The defendant is the stepfather of the victim who, at the time of trial, was four years of age. The victim and her mother resided in a trailer with the defendant for two and a half months. During those months, the victim stayed with her maternal grandmother each day while the mother was at work until such time as the defendant would come and pick up the victim and take her home. The State's evidence tended to show that when the victim made a statement to her grandmother in the presence of the defendant that "when [the defendant] pull off his britches, he hurt my tail," the grandmother contacted other relatives to whom the victim later made similar statements. A complaint was made to the Department of Social Services and an investigation begun. The victim was examined by a local pediatrician and by a pediatrician at North Carolina Memorial Hospital.

At trial, the latter testified about his examination of the victim including his opinion as to the number of times that sexual penetration took place. The defendant's natural daughter who was eight years of age testified that the defendant had performed similar acts on her some three years prior to trial. The defendant denied performing any sexual act with either the victim or with his daughter.

The jury found the defendant guilty of three counts of first degree rape and three counts of first degree sexual offense and the trial judge sentenced him to five concurrent and one consecutive life sentences. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James C. Gulick, for the State.*

*Reid, Lewis, Deese & Nance, by James R. Nance, Jr., for defendant-appellant.*

LEWIS, Judge.

Defendant presents four assignments of error on appeal.

I. The competence of the victim to testify.

[1] Defendant alleges that the court erred in determining that the victim was competent to testify because the victim did not have "the capacity to understand the obligation of an oath." The competency of witnesses to testify is determined by Rule 601 of the North Carolina Evidence Code which provides in pertinent part that "[e]very person is competent to be a witness" except "when the court determines that he is . . . (2) incapable of understanding the duty of a witness to tell the truth." G.S. § 8C-1, Rule 601(a) & (b). The North Carolina Supreme Court has defined competency as "the capacity of the proposed witness to understand and to relate under the obligation of an oath facts which will assist the jury in determining the truth of the matters as to which it is called upon to decide." *State v. Fearing*, 315 N.C. 167, 173, 337 S.E.2d 551, 554 (1985), *quoting State v. Jones*, 310 N.C. 716, 722, 314 S.E.2d 529, 533 (1984).

The portions of the *voir dire* record which are relevant to this discussion are included below:

DIRECT EXAMINATION BY THE STATE

. . . .

Counsel for the State: Your Honor, if we could let the record reflect that I'm holding up a pencil. . . .

Q: If you told your grandma this was an umbrella when it's really a pencil, what might your grandma do to you?

A: I guess might spank me.

. . . .

VOIR DIRE EXAMINATION BY THE COURT

. . . .

Q: . . . Do you know what happens to little boys and girls who don't tell the truth?

. . . .

A: I don't know.

. . . .

Q: You've told us that you know the difference between the truth and a lie. Is that right? Do you know what a lie is?

A: (Pause.) Um, (pause), I don't know.

Q: Okay. But in any event, you are telling me that you promise to tell the truth, is that right?

A: (No response.)

Q: Is that what you're promising?

A: Hum?

Q: Pardon me? Do you promise to tell the truth?

A: Um-hum.

The victim also testified that it would not be the truth if the Assistant District Attorney said that a shoe was "Sammy or Lady," or if she said that a cup was a dress. On two different subsequent occasions during *voir dire*, the victim stated that her grandma might spank her if the victim said something that wasn't true.

The testimony in this case is very similar to that in *State v. Hicks*, a case involving the competency of a seven-year-old victim to testify, in which the Court held:

> [A]lthough [the victim] did not understand her obligation to tell the truth from a religious point of view, and although she had no fear of certain retribution for mendacity, she knew the difference between the truth and a lie. . . . She indicated a capacity to understand and relate facts to the jury concerning defendant's assaults upon her, and a comprehension of the difference between truth and untruth. She also . . . affirmed her intention to [tell the truth].

319 N.C. 84, 88-89, 352 S.E.2d at 424, 426 (1987). The victim in this case also demonstrated her capability to understand "the duty of a witness to tell the truth" as required by Rule 601.

The competency of a witness "is a matter which rests in the sound discretion of the trial judge in the light of his examination and observation of the particular witness." *State v. Turner*, 268 N.C. 225, 230, 150 S.E.2d 406, 410 (1966). "Absent, a showing that the ruling as to competency could not have been the result of a reasoned decision, the ruling must stand on appeal." *State v.*

*Hicks*, 319 N.C. at 89, 352 S.E.2d at 426. We hold that the victim's testimony met the standards of Rule 601 and that the trial court did not err in finding that she was competent to testify.

II.   The pediatrician's testimony concerning the
number of times sexual penetration took place.

[2]   The defendant brings forward on appeal a "limited objection" that the witness was allowed to give an opinion as to the number of times penetration had taken place.

The pediatrician testified that the victim stated, in response to the question: "Has anybody ever touched you down there [the vaginal area]?" "Um, [the defendant] touches me there," and "He also puts his thing in me." When the victim was asked "how many times," she responded by holding "up two hands each with three fingers on them." The expert witness then examined the victim.

The testimony to which the defendant objects was that penetration occurred, according to the witness' "best judgment," "more than twice or three times" but he could not "say any more specifically."

Rule 702 of the North Carolina Rules of Evidence provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion." G.S. § 8C-1, Rule 702. The expert witness could base his opinion on (1) his medical findings about the condition of the victim's vaginal area and how it differed from normal, (2) his medical conclusion that such a condition would not usually occur from one assault or digital manipulation alone, and (3) the response of the victim when asked about the frequency of assault. He therefore possessed an adequate foundation for his conclusion.

The expert witness' opinion testimony would be of assistance to the jury in evaluating his specific medical findings. It is for the jury to determine the weight of his testimony in light of the manner in which the witness qualified his opinion. The trial court did not err.

III.  The testimony of the defendant's daughter as to
other crimes committed by defendant.

[3]  Defendant contends that the testimony of the defendant's
daughter concerning prior acts of misconduct should not have been
admitted since that evidence does not meet any of the exceptions
to the rule against such testimony and since it was unfairly prejudi-
cial. The relevant Rule of Evidence, Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible
> to prove the character of a person in order to show that he
> acted in conformity therewith. It may, however, be admissible
> for other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake,
> entrapment or accident.

The Supreme Court has been quite "liberal in admitting evidence
of similar sex crimes" under the common plan or scheme exception.
*State v. Effler*, 309 N.C. 742, 748, 309 S.E.2d 203, 207 (1983).

*State v. Gordon*, 316 N.C. 497, 342 S.E.2d 509 (1986), is control-
ling in determining the admissibility of the evidence in the instant
case. According to State's evidence, the relationship between the
defendant and the two victims was emotionally a father-daughter
relationship; sexual assaults on both victims occurred when each
was approximately the same age; defendant put each victim onto
his bed and then had sexual intercourse with her after first cover-
ing her face with a cloth; the assaults took place while his wife
was away at work; and afterwards, in both instances, defendant
would get a towel to wipe off each victim. The evidence tends
to prove a common scheme or plan on defendant's part to sexually
abuse his "daughters."

Defendant also contends that the evidence has "a prejudicial
effect on the fundamental right of the accused to a fair trial,"
referring evidently to Rule 403 which excludes relevant evidence
"if its probative value is substantially outweighed by the danger
of unfair prejudice. . . ." G.S. § 8C-1, Rule 403. This rule requires
a balancing test and the Court in the comparable case of *State
v. Gordon*, discussed above, concluded: "[I]t cannot be said that
[the evidence] was *unfairly* prejudicial. The testimony was not un-
duly cumulative nor grossly shocking." (Emphasis in original.) 316
N.C. at 505, 342 S.E.2d at 514.

We hold that the trial court did not err in allowing the testimony of the defendant's daughter as to other crimes committed by the defendant.

### IV. Insufficiency of the evidence.

[4] The State charged the defendant in three separate indictments alleging that assaults took place (1) between 1 February and 29 February of 1988—in the first indictment, (2) between 1 March and 31 March of 1988—in the second indictment, and (3) between 1 April and 14 April of 1988—in the third indictment. The defense argues that, since "we still do not know when the acts occurred," the State has violated the defendant's due process rights. At the end of the State's evidence and at the end of all the evidence, defense counsel made motions to dismiss. The Court addressed this particular concern as follows:

> Now, madam solicitor, rather than the State alleging an umbrella period, if you will, from 1 February to 14 April, the State has chosen to go forward with three separate indictments, one indictment covering the month of February, one indictment covering the month of March, and one indictment covering the period of 1 through 14 April. . . . Now, what I need to hear from [the State] are your contentions concerning the evidence supporting each of those counts as to each of those time periods. That is, February separately, March separately, and April 1 through 14 separately.

The State relies on *State v. Wood*, 311 N.C. 739, 319 S.E.2d 247 (1984), and its statement of the policy concerning specificity of alleged dates of assault in sex-related offenses involving young children.

> We have stated repeatedly that in the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence. [Citations omitted.] Nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time for the offense where there is sufficient evidence that defendant committed each essential act of the offense.

STATE v. EVERETT

[98 N.C. App. 23 (1990)]

*Id.* at 742, 319 S.E.2d at 249. In that case, defendant contended that the evidence was insufficient to convict him because the State failed to prove that the alleged rape occurred on a specific day, April 18, as alleged in the one indictment. In this case, on the other hand, the State has presented three separate indictments each of which are specific as to time. The case at bar is distinguishable. Defendant is not alleging that he should not be convicted at all since the State cannot prove the exact dates of the assaults. In fact, at trial, defendant concedes "that the State's evidence in its best light would show that if any occurrences occurred, they occurred during [April 1 to April 14] and not during the February or even the March one." Defendant in the case at bar is objecting to "the 'stacking of' sentences" through three separate indictments.

The State's evidence addressing the three separate indictments depends upon testimony by defendant's daughter and by the victim's aunt. The evidence presented for each indictment is discussed below.

A. *Indictment covering the period of February 1 to February 29, 1988.*

For the February indictment, the State relies on the following testimony by the defendant's daughter.

Q: . . . When you would see [the victim] over there at the trailer, how many times did she tell you something had happened between she [sic] and your father?

A: Every time.

The defendant's daughter stated that she had taken her father a Valentine in February. However, when she was asked if she had seen the victim on that February visit, her response twice was "I think so." The testimony of defendant's daughter on which the State relies does not include any indication concerning *when* the assaults took place but only refer to the victim's propensity to tell defendant's daughter about the assaults whenever the two girls were together. The defendant's daughter does not state with certainty that she saw the victim at any time during the month of February. There is insufficient evidence of criminal activity during the month of February 1988.

B.  *Indictment covering the period of March 1 to March 31, 1988.*

For the March indictment, the State relies once again on the same question and answer exchange quoted above and points to the fact that defendant's daughter went to a birthday party for the victim at defendant's trailer. Defendant's daughter was also asked at trial: ". . . When you think back to that birthday party, do you remember [the victim] telling you anything about what had happened to her?" Defendant's daughter stated: "Near the birthday." "Near the birthday" could refer to (1) when an assault took place, or (2) when the victim *told* defendant's daughter about an assault. This evidence, as to March, was insufficient as a matter of law, to go to the jury as to either rape or first-degree sex offense.

C.  *Indictment covering the period of April 1 to April 14, 1988.*

With regard to the April indictment, the testimony of the victim's maternal grandmother and aunts indicates that the victim spoke directly of defendant's assaults without indicating a specific time; she indirectly indicated when she was playing with a doll that the alleged acts occurred; and the victim stated that her "tail was sore" the second or third weekend in April. The victim's aunt described at trial a particular incident which occurred when she was with the victim during April on a weekend.

> [Testimony of the victim's aunt]: . . . I was going to give [the victim] her bath. . . . And [the victim] said she didn't want to take a bath, and I asked her why. She said she was sore. . . . I asked her why was she sore. . . . She told me that her. daddy had been messing with her. So I asked her what she meant, and she says, um, "I can't tell you but I can show you. . . ." And she showed me on her baby doll. . . . She just opened the Barbie's doll's legs and showed where her daddy had been messing with her at.

The State has presented sufficient evidence to prove that at least one instance of each of the alleged crimes of rape and sexual offense occurred in April.

The defendant received multiple sentences based on three separate indictments with two counts in each indictment; one for rape, the other for first-degree sex offense. We find sufficient evidence for the jury to have considered the April indictment but insufficient evidence for the February and March indictments. Thus, we affirm the two April concurrent life sentences. We reverse

STATE v. EVERETT

[98 N.C. App. 23 (1990)]

the other four life sentences from the February and March indictments.

88 CRS 21621 (April indictment)—Affirmed. Two concurrent life sentences.

88 CRS 21622 (March indictment—two life sentences) and

88 CRS 21623 (February indictment—two life sentences)—Reversed.

Judge WELLS concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurring in part and dissenting in part.

I concur with all of the majority opinion except for that portion which reverses four of the convictions.

The defendant was convicted of three counts of first-degree rape and three counts of first-degree sex offense. A review of the evidence in the light most favorable to the State reveals that the defendant raped the four-year-old victim and committed first-degree sex offense upon her on at least three separate and distinct occasions. The State's error in attempting to specify in the indictments the exact times the alleged offenses occurred should not be deemed a fatal variance from the evidence showing that multiple offenses occurred. See State v. Wood, 311 N.C. 739, 319 S.E.2d 247 (1984). In my view, the defendant was not prejudiced by the State's inability to show that one rape and one sex offense occurred in February, one of each in March, and one of each in April. It was sufficient for the State to show that at least three distinct rapes and at least three distinct sex offenses occurred. I find no error in the trial court's imposing a life sentence for one count of rape, a consecutive life sentence for another count of rape, and four concurrent life sentences in the remaining counts.